Troy P. Foster #017229
Megan Weides #033552
**The Foster Group, PLLC**
902 W. McDowell Road
Phoenix, Arizona  85007
Tel: 602-461-7990
tfoster@thefosterlaw.com
mweides@thefosterlaw.com
*Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nedal Ziyadat, an individual, and Patricia Bolden, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> Centurion, LLC, a foreign corporation, <br><br> Defendant. | Case No.: <br><br> **COMPLAINT** <br> **(Jury Trial Demanded)** |

For its Complaint against Defendant, Centurion, LLC ("Defendant" or "the Company"), Plaintiffs Nedal Ziyadat and Patricia Borden ("Plaintiffs" or "Class Representatives"), referred to jointly as "the parties," alleges as follows:

**BACKGROUND ALLEGATIONS AND JURISDICTION**

1. At all times relevant to this Complaint, Ms. Ziyadat resided in Maricopa County, Arizona, and is a citizen of the State of Arizona.

2. At all times relevant to this Complaint, Ms. Borden resided in, and is a citizen of, the State of Arizona.

3. At all times relevant to this Complaint, Defendant was a corporation authorized to conduct, and conducting business, in Maricopa County, Arizona.

4. At all times relevant to this Complaint, Defendant conducting business in the State of Arizona under the fictitious name Centurion Managed Care of Arizona, LLC.

5. Plaintiff Nedal Ziyadat was employed by Defendant from on or about July 1, 2019 through June 25, 2021.

6. Plaintiff Patricia Bolden was employed by Defendant from November 28, 2020 through September 18, 2021.

7. At all times relevant to this Complaint, Defendant has employed Plaintiffs as medical lab technicians.

8. The Class Members—as defined below—that Plaintiffs represent are current and former employees of Defendant, employed for some time during November 20, 2018 to present ("Violative Period").

9. Class Members were employed by Defendant across dozens of states across the United States.

10. At all times relevant to this Complaint, Defendant has employed all Class Members in the role of medical lab technicians and/or healthcare support staff during the Violative Period.

11. Defendant is an employer as defined in 29 U.S.C. § 203(d).

12. Plaintiffs and each Class Member were Defendant's employees as defined in 29 U.S.C. § 203(3)(1).

13. Defendant is not exempt from paying Plaintiffs and each Class Member for work performed as required by the Act.

14. The acts and omissions forming the basis of this Complaint occurred in Arizona, and several other states across the United States.

15. Jurisdiction and venue are appropriate in this Court pursuant to 29 U.S.C. § 216(b).

**GENERAL FACTUAL ALLEGATIONS**

16. Defendant is hired by correctional facilities, state hospitals, and community-based clinics across the United States to provide medical and behavior health services.

17. As part of that service, Defendant employs medical lab technicians to visit its clients on-site to perform health assessments, which included drawing blood, and providing that data to Defendant.

18. Upon information and belief, Defendant has employed approximately 1,900 medical lab technicians and healthcare support staff during the Violative Period.

19. As medical lab technicians and healthcare support staff, Plaintiffs and each Class Member, are/were non-exempt employees for Defendant.

20. Throughout all times relevant to this Complaint, Defendant treated medical lab technicians and healthcare support staff as non-exempt employees.

21. All medical lab technicians and healthcare support staff are/were required to track the hours worked, report those hours to Defendant, and Defendant purported to pay these employees for hours worked.

22. All medical lab technicians and healthcare support staff are/were paid at an hourly rate.

23. Defendant's policy acknowledges medical lab technicians and healthcare support staff are non-exempt employees.

**Allegations Regarding Required Weekly Free Work**

24. Plaintiffs, and each prospective Class Member, is/was required to perform work for Defendant without compensation.

25. Defendant's Company-wide policies and procedures provided that Plaintiffs, and each prospective Class Member, is/was required to perform work without compensation.

26. All of the work performed by Plaintiffs, and each prospective Class Member, was to benefit Defendant.

27. Every week Plaintiffs, and each prospective Class Member, worked he/she is/was required to perform the following tasks without compensation:

    a. Field calls from management on the weekends and/or after hours;

    b. Assist with patient intake or other operational issues;

      c.      Answer phone call and questions 24 hours/day;

      d.      Purchase medical and office supplies;

      e.      Draw patient blood and track COVID swabs;

      f.      Confirm with management he/she is/was clocked out then forced to finish performing job duties.

28. Defendant has a policy that requires employees to obtain permission to work any overtime hours.

29. Defendant would use this policy as a reason to not pay Plaintiffs for any overtime work.

30. In fact, Defendant would discipline Plaintiffs for claiming overtime hours and/or working overtime after requiring Plaintiffs to work the overtime.

31. Defendant's policy requires Plaintiffs, and each prospective Class Member, to check their Company emails daily, and make any necessary responses, without compensation.

32. Plaintiffs have spoken with other medical lab technicians and other healthcare support staff, and upon information and belief, their experience of Defendant's policy requiring them to work for free are nearly identical across the United States.

### Allegations Regarding Defendant's Willful Violation

33. Plaintiffs, and various prospective Class Members, tracked the time worked on Defendant's behalf.

34. Defendant removed tracked time from Plaintiffs', and various prospective Class Members', timecards for work performed in paragraphs 26, 30 in this Complaint.

35. Defendant reaffirmed its policy and procedure of not compensating Plaintiffs, and each prospective Class Member, for the work performed in paragraphs 26, 30 in this Complaint.

36. In refusing to compensate Plaintiffs on one occasion, Defendant expressly noted: "Do not work unauthorized OT at all. Arrive/leave on schedule unless expressly asked by leadership to do otherwise – will be reviewed each pay period."

37. Yet, Defendant's leadership regularly and consistently required Plaintiffs, and each prospective Class Member, to clock out and continue working.

38. If Plaintiffs refused to work off-the-clock, he/she faced further discipline and/or termination for subordination.

39. If Plaintiffs complied with leadership's instruction, he/she was not paid for the work performed.

40. After requesting to be paid for hours worked and denied by Defendant, and/or hearing of others' denials, Plaintiffs and prospective Class Members did not complain each and every time that they were not compensated for work performed on behalf of Defendant.

41. The Department of Labor already determined that Defendant violated the FLSA and Plaintiffs were entitled to their unpaid wages.

## Collective Action Allegations

42. Plaintiffs bring this lawsuit as a "collective action" under 29 U.S.C. § 216(b) of the Act because, as discussed in this Complaint, the Company's employees are similarly situated.

43. Accordingly, Plaintiffs bring this lawsuit on their own behalves, and on behalf of the following employees and former employees of Company ("Class Members").

44. The Class is initially defined as: any current or former employee of Defendant, engaged as a medical lab technician or healthcare support staff, from November 20, 2018 to date of filing.

45. The number of prospective Class Members is so numerous that joinder of all individuals to a single complaint would be impractical.  Though the exact number of Class Members is unknown and in complete control of Defendant, based upon the number of staff in each facility, given turnover, it is reasonable to believe that there are a minimum of 1,900 Class Members.  The Class Members are readily identifiable from Defendant's employment and payroll records.

46. There are questions of law and fact common to all Class Members.  These common questions include, but are not limited to:

      a.      Did Defendant fail to pay Class Members for work performed?

      b.      Are the medical lab technician and healthcare support staff positions non-exempt under the Act?

      c.      Did Defendant's policy prescribe this practice?

47. Plaintiffs' claims are typical of all other Class Members. Plaintiffs, like all other Class Members, are medical lab technicians and/or healthcare support staff that performed work for Defendant that was uncompensated. All Class Members were subjected to Defendant's global policy and practice of not paying them for work performed.

48. Plaintiffs will fairly and adequately represent the Class Members. Plaintiffs were employed with Defendant for the entire Violative Period, and Plaintiff Ziyadat represents medical lab technicians and Plaintiff Bolden represents healthcare support staff. Both Plaintiffs have the same non-conflicting interests as the other Class Members. Plaintiffs have retained competent counsel who has experience in litigating collective action matters that involve federal employment, and in particular, national wage claims. As such, the Class Members' claims will be fairly and adequately represented by Plaintiffs and their counsel.

49. A collective action is superior to other available methods for adjudicating the claims effectively and efficiently. The adjudication through a collective action will avoid potentially inconsistent and conflicting results of the asserted claim for the medical lab technicians that opt in. There will be no difficulty in managing the Class, and a single adjudication of the claim will substantially benefit the Class Members and the Court. Damages for individual Class Members are likely inadequate to justify the cost of individual litigation – especially in light of the fact that the Class Members are/were non-exempt employees with relatively lower income. As such, absent a collective action or something similar, Defendant's willful violations of law inflicting significant damages in the aggregate would go unremedied.

50. A collective action is also appropriate under 29 U.S.C. § 216(b) because Defendant has acted or refused to act on grounds generally applicable to the Class

Members, such that final injunctive relief or declaratory relief is appropriate to the Class as a whole.

### Count One:  Violation of FLSA

51. Plaintiffs, and Class Members, re-allege and incorporate by reference paragraphs 1 through 50 as if fully set forth herein.

52. Defendant failed to pay Plaintiffs, and Class Members, for work performed during the Violative Period in violating of the Act.

53. Defendant acted and continues to act with malice or reckless disregard to Plaintiffs' and Class Members' rights, and thus, Plaintiffs and Class Members are entitled to recover punitive damages in amount to be determined at trial.

54. Plaintiffs, and each Class Member, are entitled to recover all unpaid wages, liquidated damages, reasonable attorneys' fees, and costs of the action.

### Count Two:  Declaration and Injunctive Relief

55. Plaintiffs, and Class Members, re-allege and incorporate by reference paragraphs 1 through 54 as if fully set forth herein.

56. There is a present and actual controversy between, on the one hand, Plaintiff and Class Members, and on the other hand, Defendant, concerning their rights and respective duties under the Act.

57. Plaintiffs, and Class Members, contend that Defendant violated their rights under the Act.

58. Plaintiffs, and Class Members, are informed and believe, and therefore allege, that Defendant denies any liability to them.

59. Plaintiffs, and Class Members, seek a judicial declaration of the rights and duties of the respective parties under the Act.  Declaratory relief is therefore necessary and appropriate.

60. Plaintiffs, and Class Members, has suffered injury in fact and has lost money in wages as a result of Defendant's unlawful and unfair practices in violation of the Act.

61. Upon information and believe Defendant continues to violate Plaintiffs' and Class Members' rights arising out of the Act.

62. Accordingly, Plaintiffs and Class Members are authorized to pursue injunctive relief against Defendant that is necessary to prevent Defendant's further violations of their rights under the Act.

63. Defendant acted and continues to act with malice or reckless disregard to Plaintiffs' and Class Members' rights, and thus, Plaintiffs and Class Members are entitled to recover punitive damages in amount to be determined at trial.

## **RELIEF REQUESTED**

**THEREFORE**, Plaintiffs, and each Class Member, respectfully requests the following relief:

A. A declaratory judgment that Defendants' actions have, and continue to do so, violate Plaintiffs' and Class Members' rights under the FSLA.

B. An award of unpaid wages in an amount appropriate to proof adduced at trial pursuant to 29 U.S.C. § 207 and 216(b).

C. An award of liquidated damages in an amount appropriate to the proof adduced at trial pursuant to 29 U.S.C. § 216(b).

D. Statutory penalties for willful violations of 26 U.S.C. § 7434;

E. Punitive damages and attorneys' fees and costs pursuant to 29 U.S.C. § 216(b);

F. Pre- and post-judgment interest on the amount of unpaid wages; and

G. An Injunction against Defendant prohibiting further, and continued violations, of the Act.

///

///

///

**DATED** this 23rd day of November, 2021.

8

|     |     |
| --- | --- |
| 1   |     |
| 2   | **The Foster Group, PLLC** |
| 3   | /s/ *Troy P. Foster* |
|     | Troy P. Foster |
| 4   | Megan Weides |
|     | 902 W. McDowell Road |
| 5   | Phoenix, Arizona 85007 |
|     | *Counsel for Plaintiff* |

1